UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LENWORTH PARKE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action<br>No. 22-3559 (CPO) (SAK)<br><br>**OPINION** |

**O'HEARN, District Judge.**

Before the Court is Defendant's motion to dismiss the second amended complaint (hereinafter "Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 35.) For the following reasons, the Court will deny Defendant's motion.

## I.    BACKGROUND[1]

This case arises from an incident at Federal Correctional Institution ("FCI) Fairton, where another inmate attacked Plaintiff. (ECF No. 32, ¶¶ 16–19.)  Plaintiff names only the United States as a Defendant.

According to Plaintiff, on July 24, 2020, he was called to the Lieutenants' Office at FCI Fairton. (*Id*. ¶ 6.)  Lieutenants Barber, Robinson, and Wieler (collectively "the Lieutenants"), advised "Plaintiff that another inmate dropped a note stating that Plaintiff was in a fight." (*Id*. ¶ 7.) "The Lieutenants also asked Plaintiff if he had a cell phone and where it was kept." (*Id*. ¶ 11.)   At FCI Fairton, inmates "routinely" use drop notes to move other inmates to the special housing unit ("SHU") "to get them out of [their normal] housing unit or particular cells within [that] housing

---

[1] The Court will accept as true the factual allegations in the Complaint for the purposes of this Motion as it must pursuant to Fed. R. Civ. P. 12(b)(1).  The Court has made no findings as to the veracity of Plaintiff's allegations.

unit." (*Id*. ¶ 8.) Inmates use the "notes as an alternative to . . . violent means of ridding themselves of other inmates they . . . take issue with." (*Id*. ¶ 9.) This practice is effective because if an inmate is in a fight or in possession of a cell phone, staff will place that inmate in the SHU, at least during the investigation period. (*Id*. ¶ 12.)

The Lieutenants were "aware of [these] tactics used by inmates to have other inmates removed . . . and that if inmates are not removed[,] . . . violent means may be used on that inmate." (*Id*. ¶ 10.) In fact, Plaintiff had been the target of this practice in the past, in August of 2019, where a drop note was issued, "and the Lieutenants placed Plaintiff in the SHU." (*Id*. ¶ 13.)

Based on the previous practice related to the use of drop notes, Plaintiff alleges that the "Lieutenants had actual knowledge of the danger but disregarded and ignored the implications of the drop note [on this occasion in July 2020]." (*Id*. ¶ 14.) The Lieutenants did not move him to the SHU, did not conduct any further investigation, and sent him back to his regular housing unit. (*Id*. ¶ 15.) Upon returning to his housing unit, another inmate struck "Plaintiff in the face with some type of weapon," and knocked him unconscious. (*Id*. ¶¶ 16–17.) Plaintiff was taken to an outside hospital, where doctors performed surgery to "put a plate with 18 screws in his left cheek." (*Id*. ¶¶ 18–19.)

Plaintiff submitted a notice of tort claim regarding the events above which was denied on February 22, 2022. (*Id*. ¶ 4.) Plaintiff filed his original complaint in June of 2022, and the second amended Complaint in February of 2025. (ECF Nos. 1, 32.) Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (ECF No. 35), Plaintiff filed an Opposition, (ECF No. 36), and Defendant filed a Reply, (ECF No. 37).

## II.   STANDARD OF REVIEW

Under Rule 12(b)(1), an attack on subject matter jurisdiction may be either a facial or factual attack. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (cleaned up). When considering a facial attack, "the standard is the same [as] when considering . . . a motion to dismiss . . . under Rule 12(b)(6). *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006). Accordingly, a court "looks only at the allegations in the pleadings," must "accept them as true," and read them "in the light most favorable to the plaintiff." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *Petruska*, 462 F.3d at 299. On the other hand, for a factual attack, "it is permissible for a court to review evidence outside the pleadings." *Atkinson*, 473 F.3d at 514.

Defendant raises a facial attack, as it contends that the allegations in the Complaint preclude this Court from exercising subject matter jurisdiction. As such, the Court must accept all the allegations of the Complaint as true.

## III.  DISCUSSION

Plaintiff brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*. Defendant moves to dismiss the Complaint for lack of jurisdiction, contending that the Court lacks jurisdiction "because decisions regarding inmate investigations and housing assignments are discretionary government functions that may not serve as a basis for a claim under the FTCA." (*See* ECF No. 35-5, at 12–25); 28 U.S.C. § 2680(a).

Generally, "the United States, as sovereign, is immune from suit . . . [unless] it consents to be sued . . . and the terms of its consent" define a court's jurisdiction to entertain a suit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The "FTCA operates as a limited waiver of the United State[s'] sovereign immunity." *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. A plaintiff asserting a FTCA claim bears the burden of establishing jurisdiction, *i.e.*, that the United States has waived sovereign immunity with respect to his claims. *E.g.*, *Lewis v. United States*, No. 22-1421, 2023 WL 129417, at *1 (3d Cir. Jan. 9, 2023).

Although the FTCA acts as waiver of sovereign immunity for certain claims, that waiver is subject to a number of exceptions, such as the discretionary function exception. *See* 28 U.S.C. § 2680(a); *Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023). Under the discretionary function exception, the United States retains sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *See generally United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 808 (1984) (noting that the exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals").

In *United States v. Gaubert*, 499 U.S. 315 (1991), the Supreme Court established a two-part test for determining whether the discretionary function should apply. "First, a court must determine whether the act involves an element of judgment or choice." *Id*. at 322. If the answer is yes, the court then must ask, "whether that judgment is of the kind that the discretionary function

4

exception was designed to shield." *Id*. As the purpose of the exception "is to prevent judicial 'second-guessing' of . . . decisions grounded in social, economic, and political policy . . . the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323; *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012). The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *Abunabba*, 676 F.3d at 333.

"Even if the government can show that both parts of the discretionary function exception apply, there is an additional step." *Thieme v. United States*, No. 21-682, 2023 WL 8271766, at *3 (D.N.J. Nov. 30, 2023); *see also Xi*, 68 F.4th at 838–40. A court must also determine whether the exercise of discretion "plausibly" violated the Constitution. *Xi*, 68 F.4th at 838–40. As the Third Circuit has explained, "conduct cannot be discretionary if it violates the Constitution" because federal "officials do not possess discretion to violate constitutional rights." *Id*. at 838–39 (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988)) (holding that the discretionary function exception "does not apply to any conduct that violates the Constitution regardless of whether the constitutional rights at issue were clearly established" (cleaned up)).

Finally, although a plaintiff bears the burden of showing that their claims fall within the scope of the FTCA's waiver, the United States bears the burden of establishing that the discretionary function exception applies. *E.g.*, *Abunabba*, 676 F.3d at 333. Thus, "[a]t the motion-to-dismiss stage, all a plaintiff must do to negate the discretionary function exception is plausibly allege a constitutional violation." *Xi*, 68 F.4th at 840. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Here, assuming *arguendo*, that the Lieutenants' decisions regarding Plaintiff's housing assignment and whether to conduct an investigation satisfy both prongs of the discretionary function exception, the Court must then decide whether such conduct plausibly violated the Constitution. The Court construes the Complaint to incidentally allege that the Lieutenants failed to protect Plaintiff in violation of the Eighth Amendment.

To state an Eighth Amendment failure to protect claim, a plaintiff must show that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The first element is an "objective inquiry" that asks whether the plaintiff faced "an objectively intolerable risk of harm." *E.g.*, *Wood v. Detwiler*, 782 F. App'x 103, 105 (3d Cir. 2019) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001)) (cleaned up). On the other hand, the second element, "[d]eliberate indifference . . . is a subjective standard." *Bistrian*, 696 F.3d at 367 (cleaned up). The official must know of and disregard "an excessive risk to inmate health or safety," *i.e.*, that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw [that] inference. *Atkinson v. Taylor*, 316 F.3d 257, 262 (3d Cir. 2003) (quoting *Farmer*, 511 U.S. at 837).

Here, as to the first element, the Lieutenants received a "drop note" alleging that Plaintiff had been in a fight. (ECF No. 32, at ¶¶ 6–7.) According to Plaintiff, it was a known and "routine[]" practice that inmates "use [drop] notes as an alternative to . . . violent means of ridding themselves

6

of other inmates they take issue with," and if the target is "not removed . . . violent means may be used" to rid the inmate of the unit. (*Id*. ¶¶ 8–11.) In the light most favorable to Plaintiff, these allegations plausibly allege that he was incarcerated under conditions that posed an objectively intolerable risk of harm.

Turning to the second element, Plaintiff alleges that the Lieutenants received the drop note, and "[were] aware of the [drop note] tactics," and knew that if an inmate was "not removed . . . violent means may be used on that inmate." (ECF No. 32, ¶¶ 7, 10.) "The Lieutenants had actual knowledge of the danger but disregarded and ignored the implications of the drop note," by choosing not to move Plaintiff or conduct any further investigation. (*Id*. ¶ 14.) Indeed, in 2019, "someone dropped a note on Plaintiff and the Lieutenants placed [him] in the SHU." (*Id*. ¶ 13.) In the light most favorable to Plaintiff, these allegations plausibly allege deliberate indifference, as the Lieutenants were aware of the drop note targeting Plaintiff, the danger it posed if no action was taken to remove him from the unit and then disregarded that danger by taking no further action.

Finally, as to the last element, the Lieutenants' deliberate indifference plausibly caused Plaintiff harm, as he was attacked shortly after the "lieutenants sent him back" to his unit, indeed he was attacked upon walking through the unit's door. (*Id*. ¶¶ 15–17.)

Taken together, Plaintiff has plausibly alleged violations of the Eighth Amendment, and accordingly, the discretionary function exception cannot bar "his FTCA claim[] premised on the same conduct." *Xi*, 68 F.4th at 841–42. To be clear, the Court's decision is based upon accepting Plaintiff's allegations as true which it must at this procedural stage. Discovery may ultimately show whether Plaintiff's allegations are indeed true and whether the Lieutenants' conduct violated the Eighth Amendment or falls within the discretionary function exception, but at this stage,

Plaintiff need only plausibly allege a constitutional violation, and the Court finds he has done so. *Id.* at 840.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to dismiss. An appropriate Order follows.

Dated:  December 1, 2025

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**
